**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTIRCT OF FLORIDA**
**TAMPA DIVISION**

SSC8, LLC and WMAC 2014,
LLC,

      Plaintiffs,

v.

SALLY L. DANIEL, in her official capacity as
Hernando County Tax Collector, LISA CULLEN, in
her officaly capacity as Brevard County Tax
Collector, DAVID W. JORDAN, in his official
capacity as Lake County Tax Collector, BRUCE
VICKERS, in his official capacity as Osceola
County Tax Collector, J.R. KROLL, in his official
caoacity as Seminole County Tax Collector, CHRIS
CRAFT, in his official capacity as St. Lucia County
Tax Collector, and WILL ROBERTS, in his official
capacity as Volusia County Tax Collector,

      Defendants.

_____/

Civil Action No.   8:22-CV-289-VMC-AAS

## DEFENDANT, DAVID W. JORDAN'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT WITH MEMORANDUM OF LAW IN SUPPORT

Defendant, DAVID W. JORDAN, in his Official Capacity as Lake County Tax Collector (hereafter "Lake Tax"), pursuant to Federal Rules of Civil Procedure, Rules 8, 10, and 12(b)(6), hereby files this Motion to Dismiss Plaintiffs' Complaint with Memorandum of Law in Support, and states:

## RELEVANT BACKGROUND INFORMATION

Defendants, including Lake Tax, are the Florida Constitutional officers in and for each of their respective counties. The Office of Tax Collector is created and established by Article VIII, Section 1(d) of the Florida Constitution. Lake Tax and the other Defendants perform their Constitutional duties in accordance with the legislative mandates and other direction provided by Florida Statutes. Additionally, Lake Tax and the other Defendants, whose office is created in and

by Article VIII, Section 1(d) possess the plenary power of sovereign office delegated from the people. *Alachua County v. Powers,* 351 So. 2d 32, 42 (Fla. 1977) (citing *State v. Sheats,* 83 So. 508, 509 (Fla. 1919)) and holding that "a county officer pursuant to Article VIII, Section 1(d), Florida Constitution . . . is delegated a portion of the sovereign power," and that such officer "is responsible for the effective operation of his office"). As part of the duties of their Constitutional office, Lake Tax and the other Defendants are charged with selling tax certificates for delinquent real property taxes and non-ad valorem special assessments pursuant to the provisions of Chapter 197, Florida Statutes, more specifically, Fla. Stat. *§ 197.432* (2021). Pursuant to that section, if multiple bidders offer the same lowest rate of interest, the statute provides that the tax collector shall determine the method to select the bidder to whom the certificate will be awarded, i.e. to "break the tie." *Id.* The legislature has stated that one acceptable method to break the tie is the "random number generator" which is defined as, "a computational device that generates a sequence of numbers that lack any pattern and is used to resolve a tie when multiple bidders have bid the same lowest amount by assigning a number to each of the tied bidders and randomly determining which one of those numbers is the winner." Fla. Stat.*§ 197.102(1)(e)*. Ultimately, Lake Tax and the other Defendants must award the certificate to the "person" who will bid the lowest rate of interest and pay the required taxes, fees and costs. *§ 197.432(6).* As discussed in greater detail herein, the definition in Florida law of "person" includes entities which are the target of Plaintiffs' current Complaint. Fla. Stat. *§ 1.01(3)* (2021). The random number generator used for breaking tie-bids*,* is only *one* of conceivably many permissible methods Lake Tax could implement within its statutory discretion in order to "break the tie." Plaintiffs, though their Complaint is vague and wrought with irrelevant information and legal conclusions, contend that the random number generator stifles competition and provides no benefit to delinquent taxpayers

or taxing authorities. Plaintiffs, with nothing more than speculative allegations at best, claim this process deprives them of substantive due process, and that Defendants' use of this method constitutes an arbitrary and capricious exercise of power, having no rational relationship to any legitimate government interest. *Plaintiffs' Complaint Par. 37, 38.* Further, Plaintiffs (albeit in extremely insuccinct, vague and conclusory fashion) suggest the current, varying, unspecified and undescribed policies of Lake Tax and six other Defendants, wrongfully allow all persons to bid, engage in "collusion" or otherwise participate unlawfully in the bidding process against Plaintiffs and therefore violate the Equal Protection Clause of the 14th Amendment. *Plaintiffs' Complaint, Par. 46.* Plaintiffs incorrectly claim that all Defendants require unreasonable deposits by allowing groups to place one deposit covering the entire group (despite the fact that Lake Tax does not require a deposit from any bidder).

## PLAINTIFFS' COMPLAINT

Plaintiffs, based upon vague, overbroad generalizations and speculations, as well as their own legal opinions and conclusions, improperly ask this Court to violate several well-establsihed legal doctrines including the doctrine of separation of powers, to preliminarily and permanently enjoin Defendants from allowing a certain group "persons" from participating in Florida tax certificate sales, or mandating that all Defendants adopt procedures that Plaintiffs dictate, despite Lake Tax and the other Defendants' clear statutory authority and the significant discretion given to them by the Legislature to implement its own procedures for conducting tax certificate sales. Notably, Plaintiffs wholly fail to allege, with any reasonable degree of specificity, any facts regarding any particular tax certificate sale, policy or procedure related to same, implemented by Lake Tax. They instead seek to impose liability on all Defendants based upon vaguely alleged "Equal Protection" and "Due Process" violations, purportedly as a result of various, discretionary tax certificate bidding procedures allegedly adopted (but not specified) by Lake Tax and the six

other Defendant Tax Collectors.    Particularly, Plaintiffs do not allege any specific instance or sale in which Lake Tax allegedly violated Plaintiffs' rights or provide any causal connection between any policy or procedure of Lake Tax and actual concrete harm; rather, the entire Complaint is impermissibly broad, vague, and consists of Plaintiffs' perceived narrative of how the bidding process works for tax certificate sales, combined with conclusory statements and legal conclusions regarding the Defendants' obligations under Chapter 197. Plaintiffs further allege the vague, conclusory statement that "Defendants have established a set of rules in each of their counties…" that Plaintiffs' contend "have no rational basis" without citing to a single rule adopted by Lake Tax or any other Defendant, as well as a summary of previous litigation Plaintiffs brought against other defendants that resulted in a settlement, but not in the rendering of any decision on the merits, any final order or judgment of any court. *See Complaint, Pp. 1-14.*

There are little to no factual allegations that could be admitted or denied by Lake Tax or the other Defendants, and certainly none that would demonstrate that the Plaintiffs' even have standing to assert the purported claims as alleged, obtain injunctive relief, or meet their burden to establish that this Court has jurisdiction to entertain Plaintiffs' Complaint as discussed in greater detail below. With respect to Lake Tax specifically, Plaintiffs assert one lone "factual" allegation, which is stated loosely and contained in Paragraph 23 of the Complaint. *See Complaint P. 10.* Here, Plaintiffs cite to one tax certificate number they bid on in Lake County, and apparently lost the tiebreaker lottery.    There are no other facts plead therein, regarding the conducting of this lone sale by Lake Tax, their "rules" regarding same, or why Lake Tax somehow allegedly violated any law.    If the Plaintiffs have any remedy, it is either with the legislature, Department of Revenue, or the IRS as addressed elsewhere herein, or against the so-called "sham entities" the Plaintiffs' believe unfairly and unlawfully engaged in the various Defendants' tax certificate

bidding processes and won. In fact, the allegations are so vague and speculative in nature, Plaintiffs improperly cite to the tax certificate bidding process in St. Lucie County, in which they candidly admit "Plaintiffs did not bid in St. Lucie County in 2021 but intend to do so in 2022," further demonstrating that the Plaintiffs' Complaint is so vague and speculative in nature, they simply do not have a viable remedy for the claims as alleged against Lake Tax and other Defendants, certainly none for which Plaintiffs' have standing, or this Court has jurisdiction or power to entertain. *See Complaint Par. 22.*

Similarly, in the jurisdictional statement, Plaintiffs allege that jurisdiction is appropriate pursuant to 42 U.S.C. §1983 based upon the "continuing violations of Plaintiffs' rights under the Fourteenth Amendment" and suggests the Court has supplemental jurisdiction over the Plaintiffs' "state law claims" (it is unclear what those "state law claims" are).   Plaintiffs further imply that they are requesting declaratory relief by citing to the federal Declaratory Judgment Act in the jurisdictional statement.   However, the Plaintiffs have failed to allege sufficient <u>facts</u> to support any viable Constutional or State law claims, or any claim for declaratory or injunctive relief. Instead, the Plaintiffs essentially seek an advisory opinion from this Court regarding the lawfulness of various rules and procedures used by Lake Tax and the other six Defendants, but provided none of the specific rules and procedures Plaintiffs contend are unlawful for the Court's review. Even more problematic, Plaintiffs have not alleged sufficient facts to establish that even if the "Counts" alleged against all Defendants were based upon viable legal theories, that Plaintiffs even have legal standing to pursue this action. Accordingly, this Court lacks jurisdiction to consider the claims of the Plaintiffs as presented in the Complaint (or the Plaintiffs' Motion for Injunction).

<u>**MEMORANDUM OF LAW**</u>
I.      **The Complaint Fails to Comply with Fed. R. Civ. P. 8(a)(2) and 10, and is Subject to Dismissal Under Rule 12(b)(6)**

A complaint must contain "a short plain statement of the claimshowing that the pleader is

entitled to relief."   Fed.R.Civ.P. 8(a)(2).   Plaintiffs must "state a claim to relief that is plausible on its face."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   The factual allegations within a complaint "must be enough to raise a right to relief above a speculative level."   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   A sufficient pleading "require[s] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."   *Id.* at 558.   The tenet that all factual allegations contained in a complaint must be accepted as true for the purposes of a motion to dismiss, is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. 662 at 678.

Pursuant to Rule 12(b)(6), Fed.R.Civ.P., a claim is subject to dismissal either because it asserts a legal theory that is not cognizable as a matter of law or because the factual tale alleged is implausible.   *Twombly*, 550 U.S. at 544, 555, 570.   While Rule 8 may not require that the pleader allege a "specific fact" to cover each element of the claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory.   A court will not accept as true bald assertions couched as "facts," legal conclusions masquerading as facts or conclusions contradicted on the face of the Complaint or its exhibits.   *Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949-50 (2009); *Twombly,* 550 U.S. at 544-55; *Roe v. Aware Woman Center for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001).   Likewise, unsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a rule 12(b)(6) dismissal. *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003). When considering a 12(b)(6) Motion, Plaintiffs' legal conclusions should be isolated, so as to uncover the pleading's pure factual allegations.   Those allegations will then be examined for plausibility.   *Iqbal*, 127 S.Ct. at 1967.   Complaints that do not "show" the requisite plausible entitlement to relief are thereby exposed by Rule 12(b)(6) at an early stage in order to

minimize the costs of time and money by the litigants and the courts.   *Twombly*, 550 U.S. at 558.

In the instant case, the Plaintiffs' Complaint contains nothing more than legal conclusions, a broad dissertation of Plaintiffs' understanding or summary of the nature of tax certificate sales in the State of Florida, and other boilerplate statutory language.   The Complaint is wrought with vague statements regarding various tax certificate sales in multiple counties where Plaintiffs non-specifically allege that they were not awarded tax certificates after making a bid (and even one county where they admit they have not yet bid, but "intend to bid in 2022"), giving only a vague example of a minimally described sale in each county, with no specific allegations regarding the sale, the process that occurred, the rules of the tax collectors that they allege contributed to their perceived "unfairness", the "collusion" they contend caused them to not be the winning bidder, and so forth.   Plaintiff has not properly plead factual support for the elements of any claim and the separate counts do not stand alone to sufficiently state a claim.   If the legal conclusions contained in the Plaintiffs' Complaint were to be isolated, there would be few, if any factual allegations remaining; certainly, insufficient factual allegations to satisfy the "plausibility" requirement of *Twombly* or Rule 8. Rule 8 does not empower a plaintiff to plead the bare elements of a cause of action, "affix the label 'general allegation' and expect the complaint to survive a Motion to Dismiss."   *Iqbal*, 127 S.Ct. at 1954.

Likewise, Plaintiffs' Complaint contains no factual allegations regarding Lake Tax or any Defendant that sufficiently demonstrate a legal basis for liability, establish the elements of a viable legal claim, or provide justification for the requested relief. The allegations contained in the Complaint are vague and conclusory, and render it difficult, if not impossible, for any Defendant to decipher what actions or omissions Plaintiffs contend was unlawful.   *Benoit v. Ocwen Financial Corp. Inc.,* 960 F.Supp. 287 (S.D. Fla. 1997). *Reyes v. City of Miami Beach*, 2008 U.S.

Dist. LEXIS 20087, at 11 (S.D. Fla. 2008), citing *Twombly*, 550 U.S. at 554, 127 S.Ct. at 1964 (Notice pleading not satisfied with vague, conclusory allegations that do not advise the defendant what actions he is alleged to have taken). Plaintiffs do not allege, with any reasonable degree of specificity, any facts regarding any particular tax certificate sale, policy or procedure related to same, implemented by Lake Tax or any other Defendant. They instead seek to impose liability on all Defendants based upon vaguely alleged "Equal Protection" and "Due Process" violations, based upon variable, unspecified, discretionary tax certificate bidding procedures of seven different Defendants (not specifically cited to or otherwise provided to the court).   The Plaintiffs do not allege any specific instance or sale in which Lake Tax allegedly violated Plaintiffs' alleged rights to due process or equal protection; rather, the entire Complaint is impermissibly broad, vague, and simply a narrative and summary of the Plaintiffs' perceptions combined with impermissible legal conclusions regarding the Defendants' obligations under Chapter 197, and a conclusory statement that "Defendants have established a set of rules in each of their counties…" that Plaintiffs' contend "have no rational basis" without citing to a single rule adopted by Lake Tax or any other Defendant; followed by yet another irrelevant summary of previous litigation Plaintiffs brought against non-parties to this action that resulted in a settlement, but not in the rendering of any decision on the merits, any final order or judgment of any court. *See Complaint, Pp. 1-14.*

The Plaintiffs' Complaint is also deficient because it is not <u>properly</u> separated into counts pursuant to *Rule 10, Fed.R.Civ.P.*  Rule 10, in relevant part provides that "each claim founded upon a separate transaction or occurrence... shall be stated in a separate count . . . whenever a separation facilitates the clear presentation of the matters set forth."  *Fed.R.Civ.P. Rule 10.* Plaintiffs' Complaint should be dismissed in its entirety as an impermissible shotgun pleading. The Eleventh Circuit has identified four types of "shotgun" complaints:   (1) a complaint

containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint; (2) a complaint that is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) a complaint that does not separate into a different count each cause of action or claim for relief; and (4) a complaint that asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.   *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015). In this case, Plaintiffs' Complaint may be fairly categorized as encompassing all four types of shotgun pleadings described in *Weiland*.   Plaintiffs' Complaint contains 64 allegations, in two misnumbered or mislabeled Counts, improperly combines claims against <u>seven</u> distinct tax collector-Defendants, each in a different county, with its own rules or procedures regarding tax certificate sales. Plaintiffs reallege 35 allegations (over half) in each count, a practice which has repeatedly been disfavored by Florida and federal courts.   The Plaintiffs' practice of lumping multiple defendants together and failing to provide specific allegations has routinely been determined to violate Rule 8's pleading requirements and is also violative of Rule 10.   *Lane v. Capital Acquisitions & Mgmt. Co.*, 2006 WL 4590705, at *5 (S.D. Fla. Apr. 14, 2006); *Synergy Real Estate of SW Florida, Inc. v. Premier Prop. Mgmt. of SW Florida, LLC*, 2013 WL 5596795, at *2 (M.D. Fla. Oct. 11, 2013).

After the long, vague, non-specific, conclusory allegations and "summaries" presented in the first 33 paragraphs, the Complaint contains a section labeled "Claims" (presumably Count I) purporting to allege that all Defendants' "Group Bidding Rules" (content of which not specified) deprive Plaintiffs of a fair opportunity to purchase tax certificates; Count II-42 U.S.C. §1983 Violation of Equal Protection (against all Defendants), which incorporates 35 allegations; and then

skips to "Count IV-Violation of Florida Law-Unreasonable Deposits" (against all Defendants), improperly realleges the same 35 allegations. In fact, Count IV demonstrates precisely how deficient this style of pleading is.   Lake Tax, as ascertainable by even a cursory review or attempt to bid on a tax certificate sale through its' online process, has no deposit requirement, so there is clearly no viable claim that can be alleged against Lake Tax with respect to any perceived unfairness in the deposit process.   There is no better example of the Complaint's deficiency than Plaintiffs' claim of "unreasonable deposits," which is wholly inapplicable to Lake Tax.

Plaintiffs' prayer for relief is also combined and requests the same relief from all Defendants, including a blanket statement that they are entitled to entry of an injunction, without any allegations elsewhere in the Complaint to support the entry of an injunction as an appropriate remedy for any of the purported claims. Moreover, Plaintiffs seek a declaration that the undisclosed "Group Bidding Rules" of seven distinct Defendants violated their Constitutional Rights and Florida Law.   Plaintiffs' Complaint, clearly violates Rules 8 and 10, Fed. R. Civ. P., and should be dismissed.

## II. Plaintiffs' Cannot Allege a Claim Under Any Viable Legal Theory Under Chapter 197, Florida Statutes

Even if Plaintiffs were able to establish they had standing to seek redress or allege some viable cause of action, Lake Tax and the other Defendants have the clear statutory authority to conduct the tax certificate sales in the manner complained of by Plaintiffs, and in any other manner in accordance with the statutory authority expressly given to Defendants, and the broad discretion afforded to the Defendants to implement procedures to exercise that express statutory authority. The foundation for this discretion is ascertainable from the plain language of Chapter 197 itself. Section § 197.432(6), Fla. Stat. requires tax collectors to award a tax certificate to the "person who will pay the taxes, interest, costs, and charges and will demand the lowest rate of interest."

Conspicuously absent from Plaintiffs' Complaint is any fact to support the allegations that the methods used by Lake Tax or the other Defendants to fulfill this mandate or otherwise conduct tax certificate sales are somehow violative of the Constitution or the clear, plain, unambiguous statutory discretion afforded to Lake Tax in Chapter 197, Florida Statutes. The Complaint is so deficient as drafted, that the Plaintiffs fail to cite to a single, concrete method implemented by Lake Tax at all, let alone one that is somehow unlawful.

Chapter 197 offers minimal guidance as to the details of the actual process and procedure the tax collectors are to follow in conducting the tax certificate sales. Consistent with well-established Florida law, much is left to the tax collectors' discretion both by express grant of authority and by implication. *Amos v. Mathews*, 126 So. 308, 321 (Fla. 1930)( Holding that tax collectors have "discretion... in the performance of their local duties.) Likewise, pursuant to Chapter 197, the legislature has determined that tax collectors have significant discretion in deciding what policies and procedures best comport with the statutory direction that tax certificate sales be conducted in a 'uniform, fair, efficient and accountable' manner." While Plaintiffs try to argue (albeit vaguely) that Lake Tax's method of conducting tax certificate sales "violates the clear legislative intent" of Chapter 197, they neglect to acknowledge the sections of Chapter 197 relevant to the instant proceedings consist of the very same mandate that affords the significant discretion to the tax collectors in collecting delinquent taxes under the supervision of the Department of Revenue through tax certificate sales. For example, in Fla. Stat. §197.603, expressly titled "Declaration of legislative findings and intent," the legislature states its intent: "[t]he Legislature finds that the state has a strong interest in ensuring due process and public confidence in a uniform, fair, efficient, and accountable collection of property taxes by county tax collectors."   Reviewing this provision in conjunction with Fla. Stat. § 197.432 provides even

more clarity to the depth of discretion afforded to the tax collectors when implementing and conducting the tax certificate sale process. Ultimately, while Chapter 197 does contain mandates from the legislature, it also contains multiple provisions where tax collectors are afforded wide discretion in implementing the legislative mandates as well as the tax collectors' performance of their statutory and Constitutional duties and powers.   For example, while Fla. Stat. § 197.432 mandates that tax collectors "shall" sell tax certificates within a particular timeframe, that same section affords significant discretion to tax collectors in numerous aspects of conducting tax certificate sales. Most importantly, the primary sections at issue in the instant case with respect to Lake Tax, afford Lake Tax the discretion to conduct the tax certificate sales in virtually any manner Lake Tax sees fit, including the manner Plaintiffs are vaguely complaining of.    Additionally, Fla. Stat. § 197.432(1) allows tax collectors to determine whether their sales will be conducted electronically or in person and whether proxy bidding will be permitted. Fla. Stat. § 197.432(6) also provides tax collectors with discretion in resolving tie bids, as described elsewhere herein. Fla. Stat. § 197.432(6) acknowledges that the use of a random number generator (a lottery system) is among the "acceptable methods" that a tax collector may employ in resolving tie bids, but it does not handcuff tax collectors to the use of that system or any other system for that matter. Fla. Stat. § 197.432 provides that tax collectors may choose to conduct an online tax certificate sale, but provides no specific instructions as to the registration process for online bidders; whether third party auction houses may be utilized; whether bidders may utilize master and sub-accounts; how bidders should be identified and what information can be demanded of bidders for purposes of registration; whether private contractors can be used to conduct the online auctions; when tax collectors can stop accepting registrants for the auctions; determining the dates of the delinquent tax advertisement which includes the exact date of the sale; whether to use proxy bidding whereby

the successful bidder is awarded the interest rate at the rate of one-fourth percent below the next lowest interest rate bid; what happens if a winning bidder fails to pay (i.e., is it awarded to next lowest bidder, is it struck to the county or what?); whether the tax certificate sale is closed in batch intervals or at one time; and, many other details that are left wholly to the discretion of the tax collector. Notably, the tax collectors are not even required to conduct an online auction. If they were to revert to holding live auctions (and some counties still do), Plaintiffs and others could potentially disagree with that process, because they would be unable to conveniently and readily be able to physically appear to physically bid on tax certificates, thus further limiting those who may participate in the process, which is designed to be implemented to foster a fair but competitive process, and be administratively streamlined at each tax collector's option.

In light of the above, one must conclude that Lake Tax and all Defendants have considerable statutory discretion to fill these gaps and others as dictated by the legislature. Additionally significant, is the fact that the Florida Department of Revenue, responsible for oversight of the county tax collectors' Chapter 197 and other tax-related functions, has not implemented a single administrative regulation to further limit, confine, or define the express discretion afforded to tax collectors by virtue of the plain language of Chapter 197. It logically follows that if the state agency responsible for oversight of the tax collectors' functions under Chapter 197 sees no need to enact any administrative rule or guidance for tax collectors to utilize in the exercise of the discretion afforded to tax collectors by the legislature, then certainly the Plaintiffs (and legally, the courts) are powerless to interfere.

In that regard, Plaintiffs have eluded to the idea that Lake Tax's allowing not only online bidding, but "proxy" or group bidding, is somehow violative of the plain, express statutory language that specifically authorizes Lake Tax to permit it. Section § 197.432(6), Fla. Stat. requires

tax collectors to award a tax certificate to the "person who will pay the taxes, interest, costs, and charges and will demand the lowest rate of interest." Section 1.01(3), Fla. Stat., in turn, defines "person" to include "individuals, children, firms, associations, joint adventures, partnerships, estates, trusts, business trusts, syndicates, fiduciaries, corporations, and all other groups or combinations."   There are no facts alleged that Lake Tax could somehow prevent any individual or corporation, or other entity from being deemed a separate "person" as defined by this statute. Accordingly, each is entitled to bid and be eligible to receive a tax certificate if it follows the uniform procedures established by the various tax collectors.   There is no statutory mandate that Lake Tax prohibit "group bidding," as requested by Plaintiffs, and the legislature has already spoken with respect to Lake Tax's ability to allow proxy bidding. The statutory definition of "person" requires that each of these entities be treated as a separate and distinct bidder, the same as all others, for purposes of the tax certificate auctions. The discretion afforded Lake Tax and the other Defendants is limited only by the unambiguous language as plainly set forth in Florida Statutes.   Specifically, there is no statutory authority or legal requirement for Lake Tax to treat a "person" who is part of a concerted effort or "colluding" as vaguely alleged by Plaintiffs or is part of a "bidding group" differently than any other "person" who seeks to participate in the bidding process. Certainly, the Legislature could make exceptions and provide more explicit requirements or framework for tax collectors to treat several or multiple "persons" as single person for bidding purposes, prohibit or further limiting the tax collectors' exercise of discretion in these instances, but it has not, and neither Plaintiffs nor the courts are free to rewrite the law to satisfy Plaintiffs' preference Florida courts have reiterated the broad discretion tax collectors possess under this provision, and permitting tax collectors to promulgate whatever rules and procedures they see fit to carry out effective tax certificate sales within their discretionary purview as given by the

14

legislature, including the adoption of bidder identification procedures.   *Magnolia Florida Tax Certificates, LLC v. Florida Dept. of Revenue,* 266 So.3d 1190 (1st DCA 2018).

Finally, although Lake Tax does not have a deposit requirement as alleged by Plaintiffs, the deposit issue is another example of Lake Tax's authority and discretion given by the legislature, to decide whether to have a deposit requirement, and if so, what the perimeters of that requirement will be.   Fla. Stat. § 197.432(7) expressly permits Defendants to require payment of a reasonable deposit from any person who wishes to bid for a tax certificate. The authority granted is plain and unambiguous. "The tax collector *may* require payment of a reasonable deposit from any person who wishes to bid for a tax certificate." The express grant of authority to require a deposit, without any guidance as to the amount, confers the power to the tax collector to do those things necessary to carry out the authority granted, like the other express authority given under Chapter 197. See *State ex rel. Pinellas County v. Sholtz*, 155 So. 736, 740 (Fla. 1934). "[I]t is settled in this jurisdiction that if a statute imposes a duty upon a public officer to accomplish a stated governmental purpose, it also confers by implication every particular power necessary or proper for complete exercise or performance of the duty that is not in violation of law or public policy." *In re Advisory Opinion to the Governor,* 60 So.2d 285, 287 (Fla. 1952), citing *State v. Burbridge*, 3 So. 869 (Fla. 1888) and *Bailey v. Van Pelt*, 82 So. 789, 792 (Fla. 1919).

It is clear that Fla. Stat. § 197.432 is intended to be a broad grant of authority to tax collectors in carrying out tax certificate sales, particularly when it is read in pari materia with its companion statute, § 197.603Consequently, as pointed out above, while Chapter 197 expressly limits the manner in which certain aspects of the tax certificate auctions must be conducted, it likewise provides tax collectors with broad discretion to implement additional policies or procedures which are necessary to ensure that the tax certificate sales are conducted in a fair

manner. If Fla. Stat. § 197.432 were intended to provide an exhaustive scheme for the sale of tax certificates, then Fla. Stat. § 197.603 would be superfluous and of no effect.

This conclusion has been supported elsewhere in Florida law. *Fla. AGO 2004-27*(Stating that "while [ § 197.432] provides that such sales shall comply with the procedures provided in Chapter 197, Fla. Stat., it does not set forth how the tax collector is to implement the sale of tax certificates by electronic means."). The Attorney General also noted that the "grant of a general power to a public officer or board, unaccompanied by definite directions as to how the power or authority is to exercised, implies a right to employ the means and methods necessary to comply with the statute." *Id.* It is black-letter law in Florida that if a statute imposes a duty on a public officer to accomplish a stated governmental purpose, it also confers by implication every particular power necessary or proper for complete exercise or performance of the duty.  *In re Advisory Opinion to the Governor*, 60 So.2d 285, 287 (Fla. 1952). *Deltona Corp. v. Florida Pub. Serv. Comm'n*, 220 So.2d 905, 907 (Fla. 1969);  *See also Magnolia Florida Tax Certificates, LLC;* 266 So.3d 1190 (1st DCA 2018). *Coca-Cola Co. v. State*, 406 So.2d 1079 (Fla. 1981).

Given that there is no comprehensive scheme for conducting tax certificate sales, tax collectors are necessarily vested with discretion to implement the necessary policies and procedures that are required to effect the general statutory commands which apply to tax certificate sales. Where § 197.432, as noted above, provides a broad framework for conducting tax certificate sales, and § 197.603 provides a general mandate that tax collectors ensure that the tax certificates are sold in a fair manner, reading § 197.432 as stripping the tax collectors of the discretion to implement policies necessary to conduct tax certificate sales would render the statutory command contained in § 197.603 mere surplusage. A detailed and comprehensive mandatory statutory scheme for the sale of tax certificates in § 197.432 would *ipso facto* fulfill the mandate of § 197.603

without need for additional discussion.

### III.   Plaintiffs Lack Standing to Invoke this Court's Jurisdiction

The unambiguous language of Chapter 197 combined with the obvious pleading deficiencies in the Compaint as described above lead to the logical and obvious conclusion that Plaintiffs lack direct standing because they failed to plead facts establishing that they have directly suffered an actual or imminent injury in fact. Article III of the Constitution limits the subject-matter jurisdiction of federal courts to "Cases" and "Controversies." *Aaron Private Clinic Mgmt. LLC v. Berry*, 912 F.3d 1330, 1335–36 (11th Cir. 2019); U.S. Const. Art. III, § 2. Standing "is the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). "In the absence of standing, a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims, and the court is powerless to continue." *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1269 (11th Cir. 2006) (citations and internal quotation marks omitted).

To establish Article III standing, Plaintiffs must satisfy three requirements. First, they "must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citations and internal quotation marks omitted). Second, "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant." *Id.* (alterations adopted) (internal quotation marks omitted). Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561, 112 S.Ct. 2130 (internal quotation marks omitted).

Each element of standing is "an indispensable part of the plaintiff's case" and "must be

supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id*. "While the proof required to establish standing increases as the suit proceeds, the standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734, 128 S.Ct. 2759, 171 L.Ed.2d 737 (2008) (citation omitted). Thus, to satisfy its burden at the pleading stage, Plaintiffs must "clearly allege facts demonstrating each element." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016). This Court should evaluate Plaintiffs' lack of standing upon the filing of this Motion to Dismiss based on the facts (or in this case, the lack thereof) alleged in the Complaint. *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335 (11th Cir. 2013).

The Eleventh Circuit has determined that to adequately allege injury in fact, it is not enough that a complaint " 'sets forth facts from which (the court) could *imagine* an injury sufficient to satisfy Article III's standing requirements,' since (the court)'should not speculate concerning the existence of standing, nor should we imagine or piece together an injury sufficient to give plaintiff standing when it has demonstrated none.' " *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 976 (11th Cir. 2005)(quoting *Miccosukee Tribe of Indians v. Fla. State Athletic Comm'n*, 226 F.3d 1226, 1229–30 (11th Cir. 2000)). If, whereas here, the Plaintiffs fail to meet their burden, the court lacks the power to create jurisdiction by embellishing a "deficient allegation of injury." *Id.*

An ample volume of precedent makes it abundantly clear that Plaintiffs must allege more than the bare allegations described above, that is---that they believe they have been unsuccessful in their bids because of a generalized contention that an overall process, policy or procedure (not defined or adequately described anywhere in the Complaint) that seven distinct tax collectors implemented somehow violated the Plaintiffs' Constitutional rights.   As further evidence of how

vague and uncertain Plaintiffs' claims or basis for standing are, Plaintiffs include an allegation of wholly speculative injury, that is that Plaintiffs' might be unsuccessful in winning future bids on tax certificate sales that they have not yet participated in, but that they want to or *may intend* to participate in, if this Court does not grant them the relief they seek.   In *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977), and *Jackson v. Okaloosa County,* 21 F.3d 1531 (11th Cir. 1994), the plaintiffs, alleging injuries related to proposed housing projects had to establish, among other things, a "substantial probability" that the projects would come into existence absent the challenged action). *See Arlington Heights*, 429 U.S. at 264, 97 S.Ct. 555; *Jackson*, 21 F.3d at 1537–38. Importantly, Plaintiffs must allege that it is likely "as opposed to merely speculative" that a favorable decision will lead to the injury being redressed. *Carvalho-Knighton v. U. of S. Fla. Bd. of Trustees*, 8:14-CV-1097-MSS-TGW, 2016 WL 7666137 (M.D. Fla. Mar. 18, 2016).

Plaintiffs in the instant case have not remotely come close to establishing that they have standing to seek redress from the Court, based upon the hodgepodge of generalized, vague, and conclusory "allegations" contained in the Complaint, which in sum, consists of a lengthy statement of Plaintiffs' unsupported opinions of what the tax certificate sale process consists of in the State of Florida, and why it is unfair to Plaintiffs, citing virtually nothing other than a handful of bids throughout the state that Plaintiffs vaguely contend they lost.

There are little to no factual allegations that could be admitted or denied by Lake and certainly none that would demonstrate that the Plaintiffs' have standing to assert the purported claims as alleged, obtain injunctive relief, or meet their burden to establish that this Court has jurisdiction to entertain Plaintiffs' Complaint. With respect to Lake Tax, Plaintiffs assert one lone paragraph of "factual" allegations, which are stated loosely at best. *See Complaint Par. 23.*   Here,

Plaintiffs cite to one tax certificate number they bid on in Lake County, allege their bid was tied with a group bidder, but Plaintiffs lost the "tiebreaker lottery."   There are no other facts plead regarding this sale or any other conducted by Lake Tax, Lake Tax's "rules" regarding same, or why Lake Tax somehow allegedly violated any law or caused Plaintiffs any concrete, non-speculative injury.   If the Plaintiffs have any possible remedy under the circumstances, it is not against Lake Tax, but rather the legislature, Department of Revenue, the IRS or against the so-called "sham entities" the Plaintiffs' believe unfairly and unlawfully engaged "collusion" during the various Defendants' tax certificate bidding processes and won, as addressed elsewhere herein. Plaintiffs improperly cite to the tax certificate bidding process in St. Lucie County as evidence of the "concrete" harm they sustained. Simultaneously, by footnote, Plaintiffs candidly admit they "did not bid in St. Lucie County in 2021 but intend to do so in 2022." This demonstrates that the Plaintiffs' Complaint is so vague and the alleged harm so speculative in nature, Plaintiffs simply do not have standing to assert a viable claim or seek redress against Lake Tax, and cannot establish any claim that this Court has jurisdiction or power to entertain. *See Complaint Par. 22.*

### IV. Plaintiffs Have Not Adequately Pled Any Viable Constitutional Claims

Ignoring momentarily the other obvious pleading deficiencies in the Complaint, including Plaintiffs' lack of standing and failure to properly state a constitutional claim properly enforceable through the mechanism of 42 USC s. 1983, Lake Tax will briefly address why Plaintiffs have failed to adequately allege a viable equal protection claim (or due process claim) as vaguely eluded to in the Complaint.   Governmental action such as laws or regulations are presumed to be valid and constitutional and courts must construe them in harmony with the constitution wherever it is reasonable to do so. *Chicago Title Ins. Co. v. Butler*, 770 So.2d 1210, 1214 (Fla. 2000); *Florida Dept. of Educ. v. Glasser*, 622 So.2d 944, 946 (Fla. 1993). A challenge to governmental action that

does not involve a fundamental right (i.e., freedom of speech, freedom of religion, etc.) or suspect classification (i.e., race, gender, ethnicity, etc.) is evaluated by the rational relationship test. *Silvio Membreno and Florida Association of Vendors, Inc. v. Hialeah*, 188 So.3d 13, 21 (Fla. 3d DCA 2016). Whether embodied in the Fourteenth Amendment or inferred from the Fifth, equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. In areas of economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. *Sullivan v. Stroop,* 496 U.S. 478, 485, 110 S.Ct. 2499, 2504, 110 L.Ed.2d 438 (1990); *Bowen v. Gilliard,* 483 U.S. 587, 600–603, 107 S.Ct. 3008, 3016–3018, 97 L.Ed.2d 485 (1987); *United States Railroad Retirement Bd. v. Fritz,* 449 U.S. 166, 174–179, 101 S.Ct. 453, 459–462, 66 L.Ed.2d 368 (1980). Where there are "plausible reasons" for legislative action, "our inquiry is at an end." *Fritz,* 449 U.S., at 179, 101 S.Ct. at 461.

This standard of review is a paradigm of judicial restraint. "The Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted." *Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 942–943, 59 L.Ed.2d 171 (1979) (footnote omitted). Obviously, no fundamental right or suspect classification is implicated in the undescribed "policies" Plaintiffs attempt to challenge here relating to the conduct of tax certificate sales. Under the "... modern understanding of the proper separation of powers, however, courts' power and responsibility to determine whether a law violates substantive due process and equal protection are at their absolute minimum concerning laws, such as business and economic regulations, that do not establish suspect classes

and do not infringe fundamental rights." *Id*. at 22.

To comport with the rational relationship test, "... all that is required is that the law not be arbitrary or capricious, and the court need only determine that the law bears a reasonable and substantial relationship to the purpose sought to be attained. Under this standard of review, referred to as either the reasonable relationship or the rational basis test, a state statute must be upheld... if there is any reasonable relationship between the act and the furtherance of a valid governmental objective. *Lane v. Chiles,* 698 So.2d 260, 262 (Fla. 1997)*; Haire v. Florida Dept. of Agric. & Consumer Services,* 870 So.2d 774, 782 (Fla. 2004). The Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification. *Fritz,* 449 U.S. 166 at 174. This standard is especially deferential in the context of classifications made by complex tax laws. *Williams v. Vermont,* 472 U.S. 14, 22, 105 S.Ct. 2465, 2471, 86 L.Ed.2d 11 (1985); *Regan v. Taxation with Representation of Wash.,* 461 U.S. 540, 547, 103 S.Ct. 1997, 2002, 76 L.Ed.2d 129 (1983).

The Equal Protection Clause does not demand that a legislature or governing decisionmaker actually articulate at any time the purpose or rationale supporting its classification.  *Fritz,* 449 U.S., at 179; *McDonald v. Board of Election Comm'rs of Chicago,* 394 U.S. 802, 809, 89 S.Ct. 1404, 1408, 22 L.Ed.2d 739 (1969).(Legitimate state purpose may be ascertained even when the legislative or administrative history is silent). If a purpose may conceivably or "may reasonably have been the purpose and policy" of the relevant governmental decisionmaker, this is sufficient to satisfy equal protection. *Allied Stores of Ohio, Inc. v. Bowers,*16 358 U.S. 522, 528–529, 79 S.Ct. 437, 442, 3 L.Ed.2d 480 (1959).

When governmental action that does not establish suspect classes or infringe fundamental rights is challenged, under the rational relationship test "[t]he burden is upon the party challenging

the statute or regulation to show that there is no conceivable factual predicate which would rationally support the classification under attack." *The Florida High Sch. Activities Ass'n, Inc. v. Thomas By & Through Thomas*, 434 So.2d 306, 308 (Fla. 1983) (emphasis added). This burden placed upon the party challenging the governmental authority is a very heavy burden indeed. *Silvio Membreno*, 188 So.3d at 22. Rational relationship or rational basis scrutiny is the most relaxed and tolerant form of judicial scrutiny. *City of Dallas v. Stanglin*, 490 U.S. 19, 26 (1989).   Plaintiffs' clearly cannot meet their burden to establish an equal protection violation.

Likewise, Plaintiffs' substantive due process claim (if they are in fact attempting to allege one, which is unclear on the face of the Complaint) fares no better than their equal protection claims. Plaintiffs' allege merely a blanket conclusion that all "Defendants'" unspecified bidding rules and procedures were "arbitrary and capricious." Although Plaintiffs appear to regard this as a straightforward substantive due process claim, the precise basis for the "arbitrary and capricious" cause of action is uncertain. Plaintiffs' failure to articulate the basis of the arbitrary and capricious due process claim is a sufficient ground for its dismissal. *Tyler v. Runyon*, 70 F.3d 458, 465 (7th Cir.1995) (If [a Plaintiff] fails to make a minimally complete and comprehensible argument for each of his claims, he loses regardless of the merits of those claims as they might have appeared on a fuller presentation).

Substantive due process claims are also subject to rational basis review, so long as they do not infringe fundamental rights and are not discriminatory. *In re Wood*, 866 F.2d 1367, 1371 (11th Cir.1989) (The standard for evaluating substantive due process challenges to economic legislation is virtually identical to the 'rational relationship' test for evaluating equal protection claims). Since Lake Tax's rules survive rational basis review for purposes of a purported equal protection claim, it follows *a fortiori* that the rules survive rational basis review for due

process purposes as well. *Leib v. Hillsborough County Pub. Transp. Com'n*, 558 F.3d 1301, 1306–08 (11th Cir. 2009). A rule survives rational basis review even if it "seems unwise ... or if the rationale for it seems tenuous." *Romer v. Evans*, 517 U.S. 620, 632, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996).   Challenged governmental action "... is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *F.C.C. v. Beach Communications, Inc*., 508 U.S. 307, 315 (1993).

Here, (particularly in this instance where the Plaintiffs have failed to meet the basic pleading requirements of Rules 8 and 10) the burden is solely on the Plaintiffs, attacking the legislative arrangement to negate every conceivable basis which might support it. *Madden v. Kentucky,* 309 U.S. 83, 88 (1940) (emphasis added). Stated simply, since Plaintiffs have failed to comply with the basic pleading requirements to state any claim at all, they certainly have failed to state, in any proper form, a claim for which relief could be granted under any theory.   The rational basis test "merely requires a judge to decide if reasonable people might disagree." *Silvio Membreno*, 188 So.3d at 26. "If we are intellectually honest, we will admit that most legislation easily passes this test." *Id.*

Guided by these well-established principles of law governing the scope of a court's review of challenged governmental action, the vague allegations made by the Plaintiffs do not support the conclusion that Lake Tax's methods of conducting its tax certificate sales is unreasonable. Having properly exercised his inherent discretion to establish policies and procedures for the conduct of tax certificate sales, Lake Tax should be dismissed from the instant action as a matter of law. For the reasons stated above, Plaintiffs' Complaint is legally insufficient, and Plaintiff cannot state any viable claim against Lake Tax under Florida or Federal law based upon the limited factual allegations contained in the Complaint, and allowing further amendment would be futile, so

dismissal with prejudice is warranted and appropriate.

WHEREFORE, Defendant, DAVID W. JORDAN, respectfully requests the Court to enter an Order finding that the Plaintiffs' lack standing to challenge the actions complained of in the instant case; dismissing Plaintiffs' claims against DAVID W. JORDAN with Prejudice on standing or alternative grounds, denying Plaintiffs' Motion for Injunctive Relief; awarding DAVID W. JORDAN the reasonable attorney's fees and costs incurred in defense of this action, and any such other and further relief this Court deems just and proper.

Respectfully submitted this 7th day of March, 2022.

/s/ Stephanie J. Brionez
STEPHANIE J. BRIONEZ, Esq.
Florida Bar No. 0638161
Brionez + Brionez, P.A.
P.O. Box 985
Tavares, FL 32778
352-432-4044
352-609-2876 – fax
   Email: StephB@bblawfl.com
   Secondary: WendyC@bblawfl.com
   Attorneys for Defendant, DAVID W. JORDAN

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of March, 2022, I filed the foregoing with the Clerk of the Court via the Court's CM/ECF system, which will send an electronic notice to all counsel of record.

/s/ Stephanie J. Brionez
STEPHANIE J. BRIONEZ, Esq.
Florida Bar No. 0638161
Brionez + Brionez, P.A.
P.O. Box 985
Tavares, FL 32778
352-432-4044
352-609-2876 – fax
   Email: StephB@bblawfl.com
   Secondary: WendyC@bblawfl.com
   Attorneys for Defendant, DAVID W. JORDAN